UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

GIOVANNI ESQUIVEL, *individually and on*
*behalf of others similarly situated,*

                          Plaintiff,

      -against-

LIMA RESTAURANT CORP.
(d/b/a LIMA RESTAURANT & BAR), and
CARLOS MEJIA,

                         Defendants.

---------------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:
:

REPORT AND
RECOMMENDATION

20-CV-2914 (ENV)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

      Plaintiff Giovanni Esquivel brings this wage and hour action against Lima Restaurant Corp. (d/b/a Lima Restaurant & Bar) ("Lima") and Carlos Mejia, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (the "FLSA") and the New York Labor Law, Art. 6, §§ 1 *et seq.* (the "NYLL"). (*See generally* Compl., ECF No.1.)[1] Before the Court is Plaintiff's motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b). (*See generally* Mot., ECF No. 43.)[2] The Honorable Judge Eric N. Vitaliano referred the motion for report and recommendation.

      For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion for default judgment should be **granted in part** as follows: (1) a default judgment

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted.

[2] The Motion includes a notice of the motion (Mot., ECF No. 43); a memorandum of law ("Pl. Mem.", ECF No. 44); the declaration of William K. Oates, Esq. ("Oates Decl.", ECF No. 45), that declaration's nine exhibits ("Oates Decl. Ex. ___", ECF Nos. 45-1 to 45-9); and a Certificate of Service (ECF No. 46).

should be entered against Defendants and (2) Plaintiff should be awarded damages as set forth herein.

## I.  **BACKGROUND**

### A.  **Factual Allegations**

The following facts are taken from the Complaint and the affidavits in support of Plaintiff's motion and are assumed to be true for the purposes of this motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

At all relevant times, Defendants owned, operated, or controlled Lima Restaurant & Bar, a Latin American restaurant located in Jackson Heights, Queens.  (Compl., ECF No. 1 ¶¶ 2, 23, 26; Esquivel Decl., ECF No. 45-4 ¶ 3.)  Mejia was the owner, manager, principal, and/or agent of Lima.  (Compl., ECF No. 1 ¶ 3.)  From approximately February 15, 2017 to March 19, 2020, Defendants employed Plaintiff as a waiter and a bartender at Lima Restaurant & Bar.  (*Id.* ¶¶ 4, 21; Esquivel Decl., ECF No. 45-4 ¶¶ 6, 8.)

Plaintiff claims that, while he was ostensibly employed as a bartender and waiter, he was required to spend a considerable part of his workday performing non-tipped duties, including, but not limited to, cleaning the restaurant, carrying and stocking beverage inventory, cutting fruits, sweeping, mopping, and carrying and cleaning glasses.  (Compl., ECF No. 1 ¶¶ 5, 36.)  Plaintiff also routinely handled food and other supplies that were produced outside of New York.  (Compl., ECF No. 1 ¶ 42; Esquivel Decl., ECF No. 45-4 ¶ 12.)

Plaintiff alleges that he worked six days per week and an average of 47.8 hours per week.  (Esquivel Decl., ECF No. 45-4 ¶ 15; Compl., ECF No. 1 ¶¶ 44–45.)  According to Plaintiff, he worked for a total of 52 to 58 hours per week, with the following schedule: on

Mondays from approximately 6:00 p.m. until about 12:00 a.m.; on Wednesdays and Thursdays from approximately 6:00 p.m. until about 4:00 a.m. or 6:00 a.m.; on Fridays and Saturdays from approximately 4:00 p.m. until about 12:00 a.m. or 2:00 a.m. (Compl., ECF No. 1 ¶ 45.) Defendants never granted Plaintiff any breaks or meal periods during his shifts. (Compl., ECF No. 1 ¶ 52; Esquivel Decl., ECF No. 45-4 ¶ 25.) Sometimes, Plaintiff was required to work two to four hours past his scheduled departure time, and was not paid for the additional time he worked. (Compl., ECF No. 1 ¶ 51.) Plaintiff was not required to keep track of this time and is unaware of any time tracking device that Defendants used to accurately reflect his hours worked. (*Id.* ¶ 56.)

During Plaintiff's employment, Defendants paid him $7.50 per hour, except for the last five weeks, when Defendants did not pay him at all. (Compl., ECF No. 1 ¶¶ 48–49; Esquivel Decl., ECF No. 45-4 ¶¶ 19–20.) Plaintiff's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. (Compl., ECF No. 1 ¶ 50; Esquivel Decl., ECF No. 45-4 ¶ 21.) Defendants did not provide Plaintiff with notices of pay rates and provided inaccurate wage statements that did not reflect his hours worked or wages paid. (Compl., ECF No. 1 ¶¶ 57–59; Esquivel Decl., ECF No. 45-4 ¶¶ 27–28.)

From February 15, 2017 until in or about July 2018, Defendants paid Plaintiff exclusively in cash. (Compl., ECF No. 1 ¶ 46; Esquivel Decl., ECF No. 45-4 ¶ 17.) From August 2018 until on or about March 19, 2020, Defendants paid Plaintiff his first 40 hours by check and the remainder of his wages in cash. (Compl., ECF No. 1 ¶ 47; Esquivel Decl., ECF No. 45-4 ¶ 18.) Defendants withheld a portion of Plaintiff's tips; specifically, Defendants retained between $20 and $30 from the tips customers left for Plaintiff. (Compl., ECF No. 1 ¶ 55.) Defendants also required Plaintiff to purchase job-related equipment with his own

funds, including uniform shirts, pants, ties, shoes, and aprons.  (*Id.* ¶ 61; Esquivel Decl., ECF No. 45-4 ¶ 29.)  Plaintiff has never received overtime pay or spread of hours pay.  (Esquivel Decl., ECF No. 45-4 ¶¶ 23–24, 30–31.)

### B.    Procedural History

Plaintiff initiated this action in July 2020.  (Compl., ECF No.1.)[3]  Plaintiff served the summons and Complaint on Lima in August 2020.  (Aff. of Service, ECF No. 5.)[4]  The record does not reflect service of process on Mejia.  Nonetheless, counsel appeared for both Defendants on September 24, 2020, and filed an Answer on their behalf.  (Answer, ECF No. 9.)

At an initial conference on September 25, 2020, the Court issued a discovery order.  (Discovery Order, ECF No. 12.)[5]  The Court referred the parties to Court-annexed mediation, which was unsuccessful.  (*See* Jan. 26, 2021 Order; *see also* Status Rep., ECF No. 18.)  The Court then extended discovery multiple times.  (*See* Mar. 4, 2021 Order; *see also* May 5, 2021 Order.)  The Court also granted in part Plaintiff's motion to compel Defendants' overdue responses to discovery demands.  (June 8, 2021 Order.)  On August 4, 2021, the parties appeared for a status conference, where they represented that depositions and written discovery

---

[3] The Complaint is styled as a purported FLSA collective action under 29 U.S.C. § 216(b), but Plaintiff seeks a default judgment only on his own behalf.

[4] At that time, Plaintiff was represented by Michael Faillace & Associates, P.C. and attorney Michael Faillace filed the pleadings in the case.  On November 8, 2021, attorney Faillace withdrew from the case based on his then-pending suspension from legal practice and was replaced by CSM Legal, P.C.  (ECF No. 6.)

[5] The Honorable Roanne L. Mann was the presiding magistrate judge at the case's inception; the case was reassigned to the undersigned on June 21, 2021.

were complete except for outstanding records from Defendants. (Aug. 4, 2021 Min. Entry & Order.)

Subsequently, defense counsel reported a breakdown in communications with Defendants, especially Mejia, and intent to withdraw as counsel. (Sept. 28, 2021 Min. Entry & Order; ECF No. 25.) With the Court's permission, defense counsel moved to withdraw on December 15, 2021. (ECF Nos. 33–34.) On July 21, 2022, the Court granted the motion and stayed the action for 45 days to allow Defendants to obtain new counsel or otherwise respond to the Court. (July 21, 2022 Order.) After Defendants failed to respond, the Court ordered Defendants to respond by October 31, 2022. (Sept. 20, 2022 Order.) Despite receiving ample notice (*see* ECF Nos. 37–38), Defendants did not comply with the Court's orders.

At Plaintiff's request, the Clerk of Court entered a notation of default on December 5, 2022. (Entry of Default, ECF No. 42.) Plaintiff filed the instant motion for default judgment on January 13, 2023, seeking damages, including unpaid wages, reimbursements, liquidated damages, pre- and post-judgment interest, and attorneys' fees. (Pl. Mot., ECF No. 43; Pl. Mem., ECF No. 44.) Judge Vitaliano referred the motion for report and recommendation. (Jan. 17, 2023 Order Referring Mot.)

Since counsel's withdrawal, Defendants still have not appeared in this case or responded to Plaintiff's motion.

## II.    STANDARD FOR DEFAULT JUDMENT

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment. Fed. R. Civ. P. 55(a)-(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No.19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021). *First*, when a party uses an affidavit or other proof to show that a party has

"failed to plead or otherwise defend" against an action, the clerk shall enter a default. Fed. R. Civ. P. 55(a). If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment. Fed. R. Civ. P. 55(b)(1). *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021). To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). The Court must draw all reasonable inferences in favor of the movant. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "a default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (cleaned up).

## III.    JURISDICTION AND VENUE

### A.    Subject Matter Jurisdiction

In accordance with 28 U.S.C § 1331, the Court has original jurisdiction over Plaintiff's claims pursuant to the FLSA, 29 U.S.C. § 216(b). The Court may also exercise supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367(a) because they arise out of the same facts and circumstances as the FLSA claims. *Perez v. 50 Food Corp.*, No. 17-CV-7837 (AT)(BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), *adopted by* 2020

WL 30344 (S.D.N.Y. Jan. 2, 2020).    Accordingly, Plaintiff satisfies the requirements for subject matter jurisdiction.

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. V. Yi Da Xin Trading Corp.,* 619 F.3d 207, 213 (2d Cir. 2010).    The Court has personal jurisdiction over the Defendants.    First, Plaintiff properly served Lima by delivering copies of the Summons and Complaint to the New York Secretary of State.    (Aff. of Service, ECF No. 5); Fed. R. Civ. P. 4(h)(1)(A), (e)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1).    Second, Mejia "answered the complaint, participated in discovery (for a time), and never moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(2), thereby waiving any argument regarding the Court's personal jurisdiction[.]"    *Perez*, 2019 WL 7403983, at *4 (citing *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2d Cir. 1999)).

### C.    Venue

"[A] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."    28 U.S.C. § 1391(a)(1).    A corporation is deemed to be a resident of "any district" in "a state which has more than one judicial district and in which . . . [that] corporation is subject to personal jurisdiction at the time an action is commenced."    *id.* § 1391(d).    Here, Lima is a New York corporation with its principal place of business in Jackson Heights, New York.    (Answer, ECF No. 9 ¶ 24.)    Venue is also proper for Mejia, an individual residing in Queens, New York.    (*Id.* ¶ 23.)    Accordingly, venue is proper in this district.    *See* 28 U.S.C. § 1391(d).

IV.    **DEFAULT JUDGMENT FACTORS**

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

First, as for the first factor of willfulness, "even if a defendant files an answer, a defendant's continued failure to respond to court orders to obtain new counsel evinces willful default." *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *5 (E.D.N.Y. Mar. 24, 2022) (collecting cases). Here, after the Court relieved counsel in July 2022, the Court twice warned Defendants that while Mejia could proceed *pro se*, Lima could not because a corporation is required to secure legal counsel to continue to defend the action. (July 21, 2022 Order; Sept. 20, 2022 Order.) Mejia ignored the Court's orders to obtain counsel for Lima and to communicate with the Court. "Furthermore, Defendants' counsel withdrew in part due to the clients' failure to communicate regarding this case. This repeated conduct shows a willful and deliberate disregard for this Court's orders, which militates in favor of a default judgment." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123–24 (E.D.N.Y. 2011) (collecting cases).

Second, as to whether there is a meritorious defense, "a defense may be meritorious if it is more than a conclusory denial and if it is articulated with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a serious question as to the validity of those allegations." *Brito*, 2022 WL 875099, at *5 (cleaned up). "However, a defendant must 'present evidence of facts that if proven at trial, would constitute a complete defense.'" *Rodriguez*, 784 F. Supp. 2d at 124 (quoting *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998)). Defendants' answer included possibly viable affirmative defenses, including: (1) that Plaintiff received payment of all sums which may have been due, (2) that Defendants acted in good faith in reliance on interpretations of federal and state law, and (3) that any time Plaintiff spent in any preliminary or postliminary activities must be excluded from compensable hours. (Answer, ECF No. 9 ¶¶ 133, 137, 141.) Despite these assertions, while Defendants participated in some discovery, they did not disclose all relevant records and Mejia stopped communications with counsel. (Aug. 4, 2021 Min. Entry; Sept. 28, 2021 Min. Entry & Order.) Because Defendants abandoned the litigation, the Court cannot determine whether they have meritorious defenses, which warrants default against them.

Third, Plaintiff will be prejudiced if the motion for default judgment is denied because he has "no alternative legal redress." *United States v. Myers*, 236 F. Supp. 3d 702, 708–09 (E.D.N.Y. 2017). In other words, because Defendants abandoned the case, "without the entry of a default judgment, Plaintiff would be unable to recover for the claims adequately set forth in the Complaint." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB)(SJB), 2019 WL 312149, at *4 (E.D.N.Y. Jan. 3, 2019) (cleaned up).

Based on the foregoing, entry of default judgment is permissible. The Court now turns to the issue of liability.

## V.    LIABILITY

### A.    Statute of Limitations

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)).  "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (cleaned up).  In contrast, the NYLL establishes a six-year limitations period for wage claims.  N.Y. Lab. Law §§ 198(3), 663(3).  The statute of limitations begins to run when an employee begins to work for the employer.  *Queens Convenience Deli Corp.*, 2011 WL 4962397, *at* *2.

Here, Plaintiff commenced this action on July 1, 2020.  (Compl., ECF No. 1.)  Plaintiff began working for Defendants at Lima Restaurant & Bar on February 15, 2017.  (*Id.* ¶¶ 22, 38.)  In light of Defendants' default, therefore, Plaintiff may recover under the FLSA for any claims that accrued starting on July 1, 2017, and under the NYLL for the entire period of his employment.

### B.    FLSA Coverage

To establish a minimum wage or overtime claim under FLSA, the "plaintiff must prove the following: (1) the defendant is an employer subject to [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of [the] FLSA; and (3) the employment relationship is not exempted from the FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH)(SJB), 2019 WL 8381264, at *6 (E.D.N.Y. Dec. 9, 2019) (cleaned up); 29 U.S.C. § 206(a); *id.* § 207(a).

### 1.    Employer Subject to the FLSA

The Complaint alleges that Defendants were Plaintiff's employers within the meaning of the FLSA.  (Compl., ECF No. 1 ¶ 33.)   An employer includes, "any person [*e.g.*, an individual or a corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(a), (d).  "For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022), *adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (E.D.N.Y. Sept. 23, 2022); 29 U.S.C. §§ 206, 207.  These two methods of establishing FLSA coverage are known as "individual coverage" and "enterprise coverage," respectively.  *Sanchez v. Ms. Wine Shop*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

### a.    Lima

The enterprise coverage test considers whether the employer has employees "engaged in commerce or in the production of goods for commerce," *i.e.*, it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done . . . not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 12-CV-2180 (AMD)(PK), 2022 WL 1018791, at *6 (E.D.N.Y. Mar. 16, 2022), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

Here, Plaintiff has shown that Lima is an employer subject to the FLSA under the enterprise coverage test.[6]  *Perry*, 2022 WL 1018791, at *6.  Plaintiff alleges that "numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York" and that he "regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York."  (Compl., ECF No. 1 ¶¶ 35, 42.)  Plaintiff further alleges that "[i]n each year from 2017 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)."  (*Id.* ¶ 34.)  Plaintiff also observed that Lima "did a level of business such that it had annual sales of at least $500,000.00."  (Esquivel Decl., ECF No. 45-4 ¶ 13.)  "Moreover, it is reasonable to infer that the tools and goods required to operate a restaurant engaging in interstate commerce of more than $500,000 do not exclusively come from New York State."  *Brito*, 2022 WL 875099, at *8; *see also Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) ("As a restaurant, it is reasonable to infer that [defendant] requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more . . . [and] that some of these materials moved or were produced in interstate commerce.").  Based on the foregoing, Plaintiff demonstrates that Lima is an enterprise engaged in commerce.

        **b.**      **Mejia**

With respect to an individual defendant, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees:

---

[6] Because the Court finds that Plaintiff satisfies the enterprise coverage standard, it does not address whether Plaintiff also satisfies the individual coverage test.

'control over a company's actual 'operations' in a manner that relates to a plaintiff's employment.'" *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110. Courts also consider the "economic reality" of the employment relationship by analyzing "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984))[7]; *see also Tapia*, 906 F.3d at 61 (applying the *Carter* factors to determine individual liability under the FLSA). "The test looks at the totality of the circumstances, and no individual factor is dispositive." *Brito*, 2022 WL 875099, at *6 (citing *Irizarry*, 722 F.3d at 105).

Plaintiff has shown that Mejia also qualifies as an employer under the FLSA based on the level of control he exerted over Plaintiff and over Lima. Plaintiff alleges that Mejia "possesses operational control over [Lima], an ownership interest in [Lima], and controls significant functions of [Lima]." (Compl., ECF No. 1 ¶¶ 25, 27.) Plaintiff also alleges that

---

[7] In *Barfield*, the Second Circuit observed that it "has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." 537 F.3d at 141–42. As such, the economic reality test is applicable to both individual and corporate defendants. *Id.* at 144-45 (applying the *Carter* factors to a hospital defendant). In that respect, Plaintiff's allegations meet this standard as to Lima as well. (*See* Compl., ECF No. 1 ¶ 33 ("Defendants had the power to hire and fire Plaintiff Esquivel, controlled the terms and conditions of Plaintiff's employment, and determined the rate and method of any compensation in exchange for Plaintiff Esquivel's services.").)

Mejia "determines the wages and compensation of the employees of Defendants" including him, "establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees." (Compl., ECF No. 1 ¶ 25.) These allegations are sufficient to establish that Mejia, like Lima, is an employer required to comply with the FLSA overtime and minimum wage provisions.

### 2. Employee Covered by the FLSA

The FLSA defines an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiff alleges that he was employed as a bartender and a waiter at Defendants' restaurant from approximately February 15, 2017 through March 19, 2020. (Compl., ECF No. 1 ¶ 4, 21.) Accordingly, Plaintiff has shown that he is an employee within the meaning of the FLSA. *See Perry*, 2022 WL 1018791, at *7; *Marine*, 2022 WL 17820084, at *3.

### 3. FLSA Exemptions

The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements. *See* 29 U.S.C. § 213(a)(1) (listing multiple exemptions). An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010). Whether a plaintiff-employee falls under such exemptions is a question of law. *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012).

Plaintiff has alleged facts that establish, as a matter of law, that his job as a bartender and a waiter at Defendants' restaurant constitutes non-exempt employment under the FLSA.[8]

---

[8] Before Defendants abandoned the litigation, they did not assert or offer any facts to support a finding that Plaintiff is a non-exempt employee. *See Dejesus v. HF Mgmt. Servs.*, LLC, 726 F.3d

Specifically, Plaintiff alleges that he "was required to spend a considerable part of his [workday] performing non-tipped duties, including but not limited to cleaning the restaurant, bringing up and stocking beverage inventory, cutting fruits, sweeping, mopping, and carrying and cleaning glasses." (Compl., ECF No. 1 ¶¶ 4–5.) Employment in positions with similar duties are not exempt from the FLSA. *See, e.g.*, *Fermin*, 93 F. Supp. 3d at 32 (ruling that "jobs as waiter, kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA"); *cf. Brito*, 2022 WL 875099, at *7 (similarly ruling as to bakers and helpers).

Accordingly, Plaintiff qualifies for the protections of the FLSA.

### C.    NYLL Coverage

In order to plead a NYLL claim, Plaintiff "must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'" *Perry*, 2022 WL 1018791, at *7 (quoting N.Y. Lab. Law § 190). "Under the New York Labor Law, the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Pelgrift v. 335 W. 41st Tavern Inc.*, No. 14-CV-8934 (AJN), 2017 WL 4712482, at *7 (S.D.N.Y. Sept. 28, 2017) (citing N.Y. Lab. Law §§ 651(5)-(6) and *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014)). Additionally, "[u]nder the NYLL, an employee-employer relationship is established through the degree of

---

85, 91 n.7 (2d Cir. 2013) ("A claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim.") (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) and *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)).

control exercised by the purported employer over the employee." *Brito*, 2022 WL 875099, at *8 (cleaned up). The Court has already determined that Defendants are Plaintiff's employers within the meaning of the FLSA. (*See* § V.B, *supra*.) "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition . . . Defendants are Plaintiff's employers within the meaning of the NYLL" as well. *Perry*, 2022 WL 1018791, at *7. Accordingly, Plaintiff qualifies for the protections of the NYLL.

### D.    Joint and Several Liability

Plaintiff also alleges that Mejia and Lima "are associated and joint employers" and that they "jointly employed" him within the meaning of the FLSA and NYLL. (Compl., ECF No. 1 ¶¶ 28, 30.) "As the Court has found that [Defendants] were jointly [Plaintiff's] employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in [Plaintiff's] favor." *Fermin,* 93 F. Supp. 3d at 37 (collecting cases); *see also Brito*, 2022 WL 875099, at *8.

### E.    Statutory Violations

In the Complaint, Plaintiff alleges that Defendants violated the FLSA and NYLL minimum wage and overtime provisions (Counts 1 through 4) and the NYLL provisions related to spread of hours pay, wage notices, wage statements, equipment costs, and deductions of tips (Counts 5 through 9). (*See* Compl., ECF No. 1 ¶¶ 91–128.) However, Plaintiff states that he is not seeking damages for his claim of unlawful deductions from tips (Count 9). (Pl. Mem., ECF No. 44 at 2 n.1.) Because Plaintiff does not pursue the unlawful deduction from tips claim in the instant motion for default judgment, it is waived. *Root Bros. Farms v. Big Big Produce, Inc.*, No. 21-CV-1962 (EK)(MMH), 2022 WL 4586185, at *8 (E.D.N.Y. Aug. 2, 2022), *adopted by* 2022 WL 4586350 (E.D.N.Y. Sept. 29, 2022).

16

### 1.    Liability under the FLSA and NYLL

#### a.    Minimum Wage Violations (Counts 1, 3)

Under the FLSA and the NYLL, "[a]n employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week." *Pastrana v. Mr. Taco LLC*, No. 18-CV-9374 (GBD)(SN), 2022 WL 16857111, at *3 (S.D.N.Y. Sept. 23, 2022) (citing 29 U.S.C. § 206(a) and N.Y. Lab. Law § 652(1)), *adopted by* 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022). "An employee bringing an action for unpaid minimum wages under the FLSA and the NYLL has the burden of proving that he performed work for which he was not properly compensated." *Fermin*, 93 F. Supp. 3d at 41 (cleaned up). "A plaintiff may sufficiently establish FLSA or NYLL minimum wage violations through an affidavit or declaration stating the number of hours worked." *Brito*, 2022 WL 875099, at *10. Additionally, "[i]n the context of a default and where Plaintiffs lack access to the employment records necessary to prove they were not properly compensated, Plaintiffs may meet their burden of proof by relying on recollection alone." *Pastrana*, 2022 WL 16857111, at *5 (quoting *de Los Santos v. Marte Constr., Inc.*, No. 18-CV-10748 (PAE)(KHP), 2020 WL 8549054, at *5 (S.D.N.Y. Nov. 25, 2020), *adopted by* 2020 WL 8549055 (S.D.N.Y. Dec. 17, 2020)).

As an initial matter, the Court must determine the applicable minimum wage rates under state, local, and federal law because Plaintiff is entitled to recover whichever minimum wage rate was the highest at any given period of his employment. 29 U.S.C. § 218(a); *Brito*, 2022 WL 875099, at *9. Under New York law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of the plaintiff's employment. N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. § 146-1.2(a)(1); *Pastrana*, 2022

WL 16857111, at *3.  Plaintiff alleges that Defendants employed fewer than ten employees and that he worked at the restaurant in Queens.  (Esquivel Decl., ECF No. 45-1 ¶¶ 6–7.) Defendants are thus classified as "small employers" and are subject to the New York City rates for minimum wage.  N.Y. Lab. Law § 652(1)(a)(ii).  Further, Plaintiff alleges that he worked for Defendants from approximately February 15, 2017 to about March 19, 2020.  (Compl., ECF No. 1 ¶ 38.)  During this period, state and local minimum wage rates were higher than the federal minimum wage rate, and thus, Plaintiff is entitled to compensation under the local minimum wage rate.  *Compare* N.Y. Lab. Law § 652(1)(a)(ii) (for employers with ten or fewer employees, applicable New York City minimum wage rate between $10.50 per hour and $15.00 per hour) *with* 29 U.S.C. § 206(a)(1) (federal minimum wage rate of $7.25 per hour after July 24, 2009).

Plaintiff sufficiently establishes that Defendants failed to pay him the higher New York State minimum wage to which he was entitled during the relevant period.  *Payamps*, 2019 WL 8381264, at *7.  Plaintiff alleges that "Defendants' pay practices resulted in [him] not receiving payment for all his hours worked, and resulted in [his] effective rate of pay falling below the required minimum wage rate."  (Compl., ECF No. 1 ¶ 64.)  Specifically, Plaintiff alleges that, between February 15, 2017 and March 19, 2020, Defendants paid him $7.50 per hour and that for approximately the last five weeks of his employment, Defendants did not pay him any wages for his work.  (Compl., ECF No. 1 ¶¶ 48–49; Esquivel Decl., ECF No. 45-4 ¶¶ 19–20.) Thus, for the entirety of Plaintiff's employment, Plaintiff's hourly pay rates were well below the statutory New York State and New York City minimum wage rates of $10.50, $12.00, and $13.50 during the relevant period.  *See* N.Y. Lab. Law § 652(1)(a)(ii).  Accordingly, the Court

respectfully recommends that Defendants should be liable for violations of the FLSA's and NYLL's minimum wage provisions.

### b.  Overtime Pay Violations (Counts 2, 4)

The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which [she or] he is employed.'" *Dejesus*, 726 F.3d at 88 (quoting 29 U.S.C. § 207(a)).  The NYLL includes the same requirement, providing that eight hours constitutes a "legal day's work," N.Y. Lab. Law § 160, and that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate for hours worked in excess of 40 hours in one workweek."  12 N.Y.C.R.R. § 146-1.4.  "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."  *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Here, Plaintiff sufficiently establishes that Defendants failed to pay him the requisite overtime pay.  *Perry*, 2022 WL 1018791, at *8.  Plaintiff alleges that "Defendants maintained a policy and practice of requiring [him] and other employees to work in excess of forty (40) hours per week without providing the . . . overtime compensation required by federal and state law and regulations."  (Compl., ECF No. 1 ¶¶ 6, 15.)  Plaintiff specifies that, although his weekly schedule varied, between February 15, 2017 and March 19, 2020, he worked six days

a week for an average of 47.8 hours per week at a rate of $7.50 per hour. (Compl., ECF No. 1 ¶¶ 45, 48; Esquivel Decl., ECF No. 45-4 ¶ 15.) Plaintiff further alleges that he consistently worked over 40 hours per week, that his wages never varied regardless of how many hours he worked per week, and that he did not receive (and still has not received) overtime pay. (Esquivel Decl., ECF No. 45-4 ¶¶ 14, 21–23, 30.) The Court therefore respectfully recommends that Defendants should be liable for failure to pay overtime under both the FLSA and NYLL.

### 2.    Liability under the NYLL Only

#### a.    Spread of Hours Pay Violations (Count 5)

For restaurant and hospitality workers, the NYLL's regulations also require that "on each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-1.6(a). The "spread of hours" is the length of time between the beginning and end of an employee's workday, and includes working time plus time off for meals plus intervals off duty. 12 N.Y.C.R.R. § 146-1.6. A plaintiff sufficiently establishes an employer's liability for failure to provide spread of hours pay when he alleges that he worked in "excess of ten hours on a given day" but did not receive spread of hours pay. *Calle v. Pizza Palace Cafe LLC*, No. 20-CV-4178 (LDH)(LB), 2022 WL 609142, at *6 (E.D.N.Y. Jan. 4, 2022), *adopted by* Order Adopting R. & R., *Calle v. Pizza Palace Cafe LLC*, No. 20-CV-4178 (LDH)(LB) (E.D.N.Y. Jan. 27, 2022). "A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff [may] not earn more than the minimum wage." *Fermin*, 93 F. Supp. 3d at 45 (cleaned up).

Here, Plaintiff establishes that Defendants failed to pay him the requisite spread of hours pay. *Sanchez*, 643 F. Supp. 3d at 371. Plaintiff alleges that, on average, he worked

shifts exceeding ten hours per day one and one-half times per week between February 15, 2017 and March 19, 2020, without any meal breaks.  (Compl., ECF No. 1 ¶¶ 45, 51–52; Esquivel Decl., ECF No. 45-4 ¶ 16.)  Plaintiff also alleges that Defendants paid him $7.50 per hour for all hours worked, and that they never paid spread of hours for days when he worked more than ten hours per day.  (Compl., ECF No. 1 ¶ 48; Esquivel Decl., ECF No. 45-4 ¶ 19.)  The Court respectfully recommends that, based on Plaintiff's undisputed allegations, Defendants should also be liable for spread of hours pay under the NYLL.

> **b.      Wage Notice and Wage Statement Violations (Counts 6, 7)**

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; . . . the regular pay day designated by the employer"; and the employer's address and telephone number.  N.Y. Lab. Law § 195-1(a).  The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked."  *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195-3).

"The Supreme Court recently held that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation."  *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) (citing *TransUnion*

*LLC v. Ramirez*, 141 S. Ct. 2190 (2021)), *adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023).  "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion*, 141 S. Ct. at 2203 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  To demonstrate an injury in fact, a plaintiff "must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical."  *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (cleaned up).

Since *TransUnion* was decided, "[c]ourts in this Circuit have found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing."  *Guthrie*, 2022 WL 18999832, at *6 ("Plaintiff has not alleged that he suffered any harm or injury due to defendants' failure to provide wage notices or wage statements.") (collecting cases); *Sanchez v. Trescly*, No. 19-CV-4524 (KAM)(PK), 2023 WL 2473070, at *1 (E.D.N.Y. Mar. 13, 2023) ("Regarding Plaintiffs' NYLL § 195(1) wage notice claim and NYLL § 195(3) wage statement claim, however, the Court finds that Plaintiffs lack Article III standing to bring and obtain damages for these claims because Plaintiffs fail to allege actual and concrete injuries."); *Ramirez v. Urion Constr. LLC*, No. 22-CV-3342 (LGS), 2023 WL 3570639, at *8 (S.D.N.Y. May 19, 2023) ("While there are many decisions previously awarding plaintiffs for violations of the wage and notice requirements without examining standing, or in some cases even finding Article III standing, . . . they all precede [*TransUnion*]"); *see also Rivera Avila v. Velasquez Constr. Corp.*, No. 22-CV-2606 (DG)(CLP), 2023 WL 5979180, at *7 (E.D.N.Y. June 30, 2023),

*adopted by* Order Adopting R. & R., *Rivera Avila v. Velasquez Constr. Corp.*, No. 22-CV-2606 (DG)(CLP) (E.D.N.Y. Aug. 17, 2023) (recommending denial of default and that plaintiff should be granted leave to amend the pleadings to allege standing "given that the courts' rulings on standing and these provisions of the NYLL are fairly recent").

Conversely, when "[t]he gravamen of the complaint is that the denial of plaintiff's statutory right to these documents caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages, resulting in his underpayment," courts have ruled that plaintiffs sufficiently demonstrated "a tangible injury resulting from the violation" to establish Article III standing. *Stih v. Rockaway Farmers Mkt., Inc.*, No. 22-CV-3228 (ARR)(RER), 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (plaintiff alleged that failure to provide him with proper wage notices injured him by "denying him the right to be adequately apprised of the terms and conditions of his employment," including allowances defendants purported to claim against his salary); *see also Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK)(RML), 2023 WL 5152336, at *5 (E.D.N.Y. July 18, 2023), *adopted by* Order Adopting R. & R., *Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK)(RML) (E.D.N.Y. Aug. 23, 2023) (plaintiff's affidavit in support of default judgment motion established Article III standing for NYLL wage notice claims where plaintiff alleged that "the breach of these obligations injured me by denying me the right to know the conditions of my compensation, resulting in the underpayment of wages").[9]

_____

[9] *But see Bueno v. Buzinover*, No. 22-CV-2216 (PAE)(KHP), 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) ("Denying an employee such notices—as alleged here—can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay. The Court thus finds that, by alleging that they were not furnished the

Here, "[t]hough the deficiencies in Defendants' provisions of hiring notices may amount to violations of the labor law, neither Plaintiff nor the record demonstrates how those technical violations led to either a tangible injury or something akin to a traditional cause of action, as required by the Supreme Court." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM)(RML), 2023 WL 2206568, at *6 (E.D.N.Y. Feb. 24, 2023).[10]  Plaintiff alleges that "Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL." (Compl., ECF No. 1 ¶ 81.)  Plaintiff alleges and declares that he did not receive any wage notice containing the required information under Section 195-1(a) of the NYLL.  (Compl., ECF No. 1 ¶¶ 60, 86, 115; Esquivel Decl., ECF No. 45-4 ¶ 28.)  Plaintiff also declares that he never received accurate wage statements with the requisite information under Section 195-3 of the NYLL.  (Compl., ECF No. 1 ¶¶ 58–59, 85, 118; Esquivel Decl., ECF No. 45-4 ¶ 27.)  However, Plaintiff does not allege that these violations "resulted in an injury greater than Defendants' minimum wage, overtime, and spread-of-hours wage violations." *Pastrana*, 2022 WL 16857111, at *7.  The Court finds that Plaintiff lacks standing to pursue claims or recover damages for Defendants' violations of the NYLL's wage notice and wage statement provisions.

Accordingly, the Court respectfully recommends that Plaintiff's NYLL wage notice and wage statement claims should be dismissed without prejudice.

---

statutorily required notices, plaintiffs have asserted a concrete and particularized injury sufficient to confer standing for their [NYLL] wage notice and wage statement claims.").

[10] Plaintiff Guthrie appealed that court's decision. *See* Appellant Br., *Guthrie v. Rainbow Fencing Inc.*, No. 23-350, 2023 WL 3305691 (2d Cir. May 3, 2023).

### c.  Equipment Costs Violations (Count 8)

Both the FLSA and the NYLL require employers to reimburse their employees for costs associated with the purchase and maintenance of "tools of the trade," where such expenditures bring the employee's wages below the statutory minimum. *Marine*, 2022 WL 17820084, at *7; 29 C.F.R. § 531.35 ([I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the [FLSA]."); 12 N.Y.C.R.R. § 146-2.7(c) ("If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage.").

Here, Plaintiff has shown that Defendants did not reimburse him for expenses incurred for job-related equipment.  Plaintiff states that Defendants required him to purchase, with his own funds, the following equipment required to perform his job: six black shirts, three white shirts, six pairs of black pants, four pairs of shoes, four ties, three pink ties, and six aprons. (Esquivel Decl., ECF No. 45-4 ¶ 29; *see also* Compl., ECF No. 1 ¶¶ 61, 121.)  Plaintiff also states that Defendants did not reimburse him for these purchases.  (Compl., ECF No. 1 ¶ 121.) As discussed above, Defendants failed to pay Plaintiff the requisite minimum wage and overtime wage.  Drawing all reasonable inferences in Plaintiff's favor, the Court finds that requiring Plaintiff to pay for clothing and supplies for his work, without reimbursement, further decreased his already impermissibly low wages. *Cf. Pastrana*, 2022 WL 16857111, at *6 (finding no liability for equipment costs in part because plaintiff's wages were, at times,

significantly above minimum wage).  The Court thus respectfully recommends that Defendants should be liable for failing to reimburse Plaintiff for job-related equipment costs.

## VI.    **DAMAGES**

As Defendants' liability has been established, the Court turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up).  Rather, "[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC)(SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (cleaned up). Courts must determine "damages with reasonable certainty," and avoid impermissible speculation. *Pasatieri v. Starline Prod., Inc.*, No. 18-CV-4688 (RPK)(VMS), 2020 WL 5913190, at *2 (E.D.N.Y. Oct. 6, 2020) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

"That being said, because under FLSA the burden is on an employer properly to record hours, a plaintiff need not compute FLSA damages with precision." *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (cleaned up), *adopted by* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).  "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at *15.  Where a plaintiff has sufficiently established claims under the FLSA and NYLL, that plaintiff is "not entitled to recover under both FLSA and NYLL for [backpay] earned over the same period." *Lopez*, 2018 WL 1770660, at *10.  Rather, "[a] plaintiff may

recover under the statute which provides the greatest amount of damages." *Brito*, 2022 WL 875099, at *9.

As described below, Plaintiff is seeking damages for unpaid minimum wage, overtime, and spread of hours pay; liquidated damages; unreimbursed equipment expenses; pre-judgment interest; post-judgment interest; and a fifteen percent increase penalty. (Proposed Jdgmt., ECF No. 45-9.)[11]

### A.    Minimum Wage and Overtime Pay

Plaintiff requests $46,129.80 for unpaid minimum wage and overtime compensation. (Pl. Mem., ECF No. 44 at 8–9.)

"Both the FLSA and the NYLL require New York employers to pay their employees at least the respective federal, state, or city minimum wage, whichever is higher, for every hour worked." *Brito*, 2022 WL 875099, at *16. "Under both the FLSA and NYLL, plaintiffs are entitled to overtime compensation of at least one and one-half times their regular hourly rate." *Id.* "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'" *Id.*

From February 15, 2017 to March 19, 2020, Plaintiff worked an average of 47.8 hours per week and was paid $7.50 per hour for the hours worked. (Esquivel Decl., ECF No. 45-4 ¶¶ 15, 19.) For the last five weeks of Plaintiff's employment, however, Defendants did not pay Plaintiff any wages. (Esquivel Decl., ECF No. 45-4 ¶ 20.) During discovery, Defendants

---

[11] The Court will not address Plaintiff's request for damages for failure to provide wage notices and wage statements, in violation of the WTPA.

did not produce any wage records to refute Plaintiff's claimed pay rate. (Pl. Mem., ECF No. 44 at 9.)

The Court already determined that Plaintiff is entitled to the minimum wage rates set forth in the NYLL and its regulations because they were higher than the federal minimum wage rate during the relevant time period. (*See* § V.E.1.a, *supra*.) For employers with ten or fewer employees, the applicable weekly minimum wage rates for employers in New York City, such as Defendants, were: (1) $10.50 per hour between December 31, 2016, and December 30, 2017; (2) $12.00 per hour between December 31, 2017 and December 30, 2018; (3) $13.50 per hour between December 31, 2018 and December 30, 2019; and (4) $15.00 per hour on or after December 31, 2019. N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. §§ 146-1.2(a)(1)(i)(b), 146-2.6.

Similarly, Plaintiff is entitled to unpaid overtime at the rate of one and one-half times his regular rate of pay for hours worked in excess of 40 hours per workweek. *Dejesus*, 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4. Multiplying the number of hours worked in excess of 40 by 1.5 times the New York City minimum wage rate during the relevant time period, Defendants were required to pay Plaintiff at overtime hourly rates of (1) $15.75 between December 31, 2016 and December 30, 2017; (2) $18.00 per hour between December 31, 2017 and December 30, 2018; (3) $20.25 per hour between December 31, 2018 and December 30, 2019; and (4) $22.50 on or after December 31, 2019. Plaintiff is thus entitled to the following amounts of unpaid minimum wage and overtime for working 47.8 hours per week, as shown in the following table:

| Dates of Employment | Wks[12] | Min. Wage | Min. Overtime (OT) | Lawful Weekly Pay[13] | Credited Weekly Pay[14] | Underpymt. Per Week[15] | Total Unpaid Wages & OT[16] |
|---|---|---|---|---|---|---|---|
| 2/15/2017 – 12/31/2017 | 46 | $10.50 | $15.75 | $542.85 | $358.50 | $184.35 | $8,480.10 |
| 1/1/2018 – 12/31/2018 | 52 | $12.00 | $18.00 | $620.40 | $358.50 | $261.90 | $13,618.80 |
| 1/1/2019 – 12/31/2019 | 52 | $13.50 | $20.25 | $697.95 | $358.50 | $339.45 | $17,651.40 |
| 1/1/2020 – 2/13/2020 | 6 | $15.00 | $22.50 | $775.50 | $358.50 | $417.00 | $2,502.00 |
| 2/14/2020 – 3/19/2020 | 5 | $15.00 | $22.50 | $775.50 | $0 | $775.50 | $3,877.50 |
| | | | | | | | **$46,129.80** |

(*See* Oates Decl. Ex. F, ECF No. 45-6 at 1.)  Accordingly, the Court respectfully recommends that Plaintiff should be awarded $46,129.80 in unpaid minimum wage and overtime pay.

[12] "Wks" refers to the number of weeks during the corresponding dates of employment in each row.

[13] "Lawful Weekly Pay" refers to the weekly wages Plaintiff should have received.  Plaintiff asserts that he worked an average of 47.8 hours per week and, except for the last five weeks of his employment, was paid $7.50 per hour for all hours worked.  (Esquivel Decl., ECF No. 45-4 ¶¶ 15, 19–20.)  For each time period, the Court calculated the following: ((40 hours x the applicable minimum wage + (7.8 hours x the applicable overtime hourly rate)) x (number of weeks).

[14] "Credited Weekly Pay" refers to the average wages Plaintiff was actually paid.  Accordingly, the credited weekly pay is equal to $7.50 x 47.8 hours.

[15] "Underpymt. Per Week" refers to the difference between the lawful weekly pay Plaintiff should have received minus the average weekly pay he actually received (i.e., Lawful Weekly Pay – Credited Weekly Pay).

[16] "Total Unpaid Wages & OT" refers to the unpaid minimum and overtime wage due to Plaintiff. The Court calculated by multiplying the number of weeks per time period by the amount of unpaid wages due to Plaintiff (*i.e.*, Wks x Underpymt. Per Week).

**B.      Spread of Hours Pay**

Plaintiff seeks $2,961 for unpaid spread of hours compensation.  (Pl. Mem., ECF No. 44 at 9.)

"The NYLL spread-of-hours claim, for which there is no counterpart under the FLSA, provides that an employee is entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours."  *Fermin*, 93 F. Supp. 3d at 45 (cleaned up); 12 N.Y.C.R.R. § 146-1.6(a).  Like the unpaid overtime pay, spread of hours damages are calculated based on the applicable minimum wage rates for the relevant time period.  *See Calle*, 2022 WL 609142, at *10.

Plaintiff alleges that between February 15, 2017 to March 19, 2020, on average, he "worked more than ten (10) hours per day one and one-half times per week" and never received spread of hours pay for those days. (Esquivel Decl., ECF No. 45-4 ¶¶ 16, 24.)  The Court calculates unpaid spread of hours compensation in the following table:

| Dates of Employment | Weeks | Minimum Wage | Unpaid SOH Pay[17] |
|---|---|---|---|
| 2/15/2017 - 12/31/2017 | 46 | $10.50 | $724.50 |
| 1/1/2018 - 12/31/2018 | 52 | $12.00 | $936.00 |
| 1/1/2019 - 12/31/2019 | 52 | $13.50 | $1,053.00 |
| 1/1/2020 - 2/13/2020 | 6 | $15.00 | $135.00 |
| 2/14/2020 - 3/19/2020 | 5 | $15.00 | $112.50 |
| | | | |
| | | | $2,961.00 |

(*See* Oates Decl. Ex. F, ECF No. 45-6 at 2.)  Accordingly, the Court respectfully recommends that Plaintiff should be awarded $2,961 in unpaid spread of hours premium pay.

### C.    Liquidated Damages

Plaintiff seeks $49,090.80 in liquidated damages, consisting of $46,129.80 in liquidated damages for unpaid minimum wage and overtime compensation and $2,961 in liquidated damages for spread of hours pay.  (Pl. Mem., ECF No. 44 at 10–12.)

"Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount owed for unpaid overtime compensation, unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 198(1-

---

[17] "Unpaid SOH Pay" refers to the amount of spread of hours pay Plaintiff should have received. The Court multiplied the number of weeks per period by 1.5 (Plaintiff's average weekly spread of hours days worked) by the applicable minimum wage (e.g., Weeks x SOH Days per Week x Minimum Wage).

a)). "Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages." *See Barfield*, 537 F.3d 132 at 150. ."Plaintiff[] may not, however, recover 'duplicative liquidated damages for the same course of conduct' under both the FLSA and NYLL." *Pastrana*, 2022 WL 16857111, at *10 (quoting *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)). "In cases where plaintiffs could obtain liquidated damages under either FLSA [or] NYLL, the trend has been to award liquidated damages under whichever statute provides the greater potential recovery." *Payamps*, 2019 WL 8381264, at *13. Here, where Defendants defaulted and therefore make no showing that they acted in good faith when they underpaid Plaintiff, liquidated damages under the NYLL, which awards greater recovery, are appropriate. Accordingly, the Court respectfully recommends that Plaintiff should be awarded an additional $49,090.80 in liquidated damages under the NYLL only, which includes $2,961 in spread of hours pay and $46,129.80 in unpaid minimum wages and overtime wages.

### D.    Equipment Costs

Plaintiff seeks $970 in damages for being required to purchase tools of the trade without being reimbursed by Defendants. (Pl. Mem., ECF No. 44 at 10.) Under state and federal law, an employee's mandatory costs of employment-related tools and equipment may not decrease that employee's wages below required minimum wage or overtime wages. 29 C.F.R. § 531.35; 12 N.Y.C.R.R. § 146-2.7(c).

The record shows that Plaintiff is entitled to damages for being required to purchase tools of the trade without reimbursement. "Defendants required Plaintiff Esquivel to purchase 'tools of the trade' with his own funds—including uniform shirts, pants, ties, and aprons." (Compl., ECF No. 1 ¶ 61.) Plaintiff declares that he spent $970 of his own funds as a result of

Defendants requiring him to purchase clothing, shoes, and aprons to perform his work, and provides an itemized list reflecting the cost of each item. (Esquivel Decl., ECF No. 45-4 ¶ 29.) "Although plaintiff did not supply receipts for these costs, the Court may accept plaintiff's sworn declaration as proof that he was required to purchase these items and their cost." *Calle*, 2022 WL 609142, at *12 (collecting cases); *cf. Osorio v. Taste of Thai Inc.*, No. 17-CV-5664 (JBW)(JO), 2018 WL 8059564, at *5 (E.D.N.Y. Sept. 12, 2018) (cleaned up), *adopted by* 2019 WL 1795954 (E.D.N.Y. Mar. 29, 2019) (in default posture, denying equipment costs damages where plaintiff delivery workers' evidence included "only vague estimates of the amounts spent on bicycles and related equipment, without providing itemized descriptions of their purchases or any receipts or other reliable proof of the amounts spent") (cleaned up). Accordingly, the Court respectfully recommends that Plaintiff should be awarded $970 for equipment costs expenses.

### E.    Prejudgment Interest

Plaintiff seeks, as of January 12, 2023, prejudgment interest in the amount of $17,034.96. (Pl. Mem., ECF No. 44 at 13.)

"It is well settled that in an action for violations of the FLSA prejudgment interest may not be awarded in addition to liquidated damages." *Fermin*, 93 F. Supp. 3d at 48 (cleaned up); *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988). In contrast, the NYLL enables a plaintiff to recover both liquidated damages and prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 48. Accordingly, Plaintiff is eligible to recover prejudgment interest on compensatory damages for unpaid wages available under the NYLL at 9% per annum. *See id.* at 49–50; N.Y. C.P.L.R. § 5004; *Calle*, 2022 WL 609142 at *12 ("[P]rejudgment interest is only available for unpaid wage amounts, not for damages awarded for failure to provide

wage notices and statements."); *see also Avedana v. Casa Ofelia's Bakery LLC*, No. CV-20-2214 (DG)(AKT), 2021 WL 4255361, at *12 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021) (applying prejudgment interest rate to NYLL claims).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b).  Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49.  Courts generally calculate prejudgment interest in NYLL "from the midpoint date of the claims through the date judgment is entered" as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims."  *Perry*, 2022 WL 1018791, at *13; *Calle*, 2022 WL 609142, at *12; *Pastrana*, 2022 WL 16857111, at *10; *Sanchez*, 643 F. Supp. 3d at 380.

Here, the record shows that Plaintiff is entitled to prejudgment interest for his unpaid wages.  As discussed, the Court recommends that liquidated damages be awarded under the NYLL, as opposed to the FLSA, and thus, pre-judgment interest may be awarded. (*See* § VI.A–C, *supra*.)  The recommended recovery for unpaid wages (including minimum wage, overtime, and spread of hours pay) under the NYLL is $49,090.80.  For purposes of calculating prejudgment interest, the Court selects September 2, 2018 (the midpoint between Plaintiff's start date of employment (February 15, 2017) and Plaintiff's end date of employment (March 19, 2020) as a reasonable intermediate date.  Applying a nine percent per annum rate, the Court respectfully recommends that Plaintiff should be awarded $22,429.78 in prejudgment interest

from September 2, 2018, through September 29, 2023.  This amount will increase by $12.10 per day until the entry of judgment.[18]

## F.    Post-Judgment Interest

Plaintiff seeks post-judgment interest as calculated by 28 U.S.C. § 1961.  (Pl. Mem., ECF No. 44 at 12.)

A plaintiff is "entitled to post-judgment interest on all civil money awards as a matter of right in federal court."  *Brito*, 2022 WL 875099, at *27.  "[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961).  Accordingly, the Court recommends that Plaintiff should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## G.    Fifteen Percent Increase Penalty

Plaintiff seeks an automatic increase of 15% for any unpaid amount of the judgment still pending after 90 days following the entry of judgment.  (Pl. Mem., ECF No. 44 at 13; Oates Decl. Ex. I, ECF No. 45-9 at 2.)  Where there is a cause of action under the NYLL, "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  N.Y. Lab.

---

[18] The Court calculates the daily prejudgment interest rate by multiplying the total amount of unpaid wages ($49,090.80) by 9%, then dividing by 365, for a daily rate of $12.10.  The daily rate is then multiplied by the number of days between September 2, 2018 and September 29, 2023 (1,853 days).

Law § 198(4).  "The increase applies only to damages awarded under state law."  *Perry*, 2022 WL 1018791, at *14 (collecting cases).  Accordingly, the Court respectfully recommends that Plaintiff's damages awarded under the NYLL should be increased by 15% if Defendants fail to timely satisfy the judgment.

H.    **Attorneys' Fees**

Plaintiff seeks attorneys' fees in the amount of $19,992.50 based on 52.2 hours of work for attorneys Michael Faillace, William K. Oates, Daniel Tannenbaum and an unidentified paralegal.  (Pl. Mem., ECF No. 44 at 14–16.)

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions."  *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *adopted by* 2020 WL 2769266 (E.D.N.Y. May 28, 2020).  "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request."  *Perry*, 2022 WL 1018791, at *14.  "The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Hennessy v. 194 Bedford Ave Rest. Corp.*, No. 21-CV-5434 (FB)(RML), 2022 WL 4134502, at *6 (E.D.N.Y. Aug. 8, 2022), *adopted by* 2022 WL 4134437 (E.D.N.Y. Sept. 12, 2022) (cleaned up).  "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Id.* (cleaned up).  "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly."  *Perry*, 2022 WL 1018791, at *14 (cleaned up).

"Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours." *Id.* (cleaned up). "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD)(MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *adopted by* 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Here, the record shows that an award of attorneys' fees is appropriate.

### 1.    Hourly Rate

Plaintiff asserts that the Court should award attorneys' fees based on the following hourly rates: $450 for Managing Member Michael Faillace; $400 for Associate William K. Oates; $350 for Associate Daniel Tannenbaum; and $125 for paralegal work from unidentified individuals.  (Pl. Mem., ECF No. 44 at 14.)

"Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848 (RRM)(RER), 2022 WL 4646866, at *13 (E.D.N.Y. Aug. 29, 2022), *adopted by* 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022).

Because of the relatively straightforward nature of Plaintiff's wage and hour claims, the Court finds that Plaintiff's proposed hourly rates are unreasonable.  First, the Court recommends an hourly rate of $400 for Mr. Faillace.[19]  Mr. Faillace was the Managing Member of Michael Faillace & Associates, P.C., which is now C.S.M. Legal, P.C., and was in practice

---

[19] In November 2021, the Court granted Mr. Faillace's motion to withdraw as attorney.  (Nov. 17, 2021 Order.)

from 1983 to 2021.  (Pl. Mem., ECF No. 44 at 14.)  In 2021, Mr. Faillace "was 'suspended from practice for two years by the Grievance Committee of the Southern District of New York . . . as a result of repeatedly taking fees from settlements in excess of the amounts awarded to him by court order (effectively stealing from his clients' recoveries)' and other egregious conduct." *Diaz*, 2022 WL 4646866, at *14 (quoting *Garcia Lazaro v. Best Fish Mkt. Corp.*, No. 21-CV-5305 (BMC), 2022 WL 280768, at *2 (E.D.N.Y. Jan. 31, 2022)). Plaintiff's counsel represents that Mr. Faillace will not receive any portion of an award of attorneys' fees "unless an application is made to the Court on his behalf and an order is entered to that effect." (Pl. Mem., ECF No. 44 at 14 n.2.)  Although Mr. Faillace was an experienced "Managing Member," the Court finds that the requested hourly rate of $450 is unreasonable under the circumstances of this case.  Instead, the Court finds that an hourly rate of $400 is consistent with Mr. Faillace's limited role in this and other routine wage and hour cases.  *See Diaz*, 2022 WL 4646866, at *14 (collecting cases); *see also Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC)(CLP), 2022 WL 954740, at *12 (E.D.N.Y. Mar. 30, 2022) (collecting cases).

Second, the Court recommends an hourly rate of $375 for Mr. Oates.[20]  Mr. Oates was an Associate at C.S.M. Legal, P.C. who graduated from law school in 1995 and has been practicing in New York since.  (Pl. Mem., ECF No. 44 at 15.)  Although Mr. Oates is an experienced associate, the Court finds that the requested hourly rate of $400 is unreasonable under the circumstances of this case.  The Court finds that an hourly rate of $375 is reasonable

---

[20] In April 2023, the Court granted Mr. Oates' motion to withdraw as attorney.  (Apr. 14, 2023 Order.)

here, which is consistent with other routine wage and hour cases involving the same counsel and the same posture of resolution through a default judgment. *See Cruz v. JJ's Asian Fusion Inc.*, No. 20-CV-5120 (MKB)(RML), 2022 WL 687097, at *10 (E.D.N.Y. Jan. 11, 2022), *adopted by* 2022 WL 577954 (E.D.N.Y. Feb. 25, 2022).

Third, the Court recommends an hourly rate of $300 for Mr. Tannenbaum.[21]   Mr. Tannenbaum was an Associate of Michael Faillace & Associates, P.C. who graduated from law school in 2008 and has practiced at a number of law firms since.  (Pl. Mem., ECF No. 44 at 15.)   The requested hourly rate of $350 exceeds the reasonable hourly rate for senior associates in this district. *See Diaz*, 2022 WL 4646866, at *14.  An hourly rate of $300 is more reasonable based on Mr. Tannenbaum's limited role in the case, as reflected in the billing records. *See id.*

Finally, the Court recommends an hourly rate of $100 for paralegal work.  Plaintiff's motion papers do not state any facts regarding the identify or qualifications of the paralegal that performed work in this case.  Regardless, the requested hourly rate of $125 is higher than what is typically awarded in this district. *See Cruz*, 2022 WL 687097, at *10 (collecting cases).  Instead, the Court concludes that an hourly rate of $100 is more appropriate. *See id.*

## 2.    Reasonable Hours Expended

The Court finds that the number of hours expended in this case are reasonable, based on the records attached to the motion.  Counsel billed a total of 52.2 hours, consisting of 3.1 hours from Mr. Faillace, 41.3 hours from Mr. Oates, 4.9 hours from Mr. Tannenbaum, and 2.9

---

[21] In December 2020, the Court granted Mr. Tannenbaum's motion to withdraw as attorney.  (Dec. 29, 2021 Order.)

hours from a paralegal. (*See generally* Oates Decl. Ex. G, ECF No. 45-7.) This is reasonable for the circumstances of this case, where Plaintiff's counsel engaged in mediation and discovery before Defendants defaulted.

Accordingly, the Court respectfully recommends an award of $18,487.50 in attorneys' fees.[22]

### I.      Costs

Finally, Plaintiff seeks $2,314.70 in costs, (Pl. Mem., ECF No. 44 at 16; Oates Decl. Ex. H, ECF No. 45-8.)

Pursuant to both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Avedana*, 2021 WL 4255361, at *13. Plaintiffs must provide sufficient documentary evidence to support an award of reasonable costs. *Marine*, 2022 WL 17820084, at *11. Further, the Court permissibly takes judicial notice of the docket notations for paid filing fees. *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023). Here, Plaintiff is entitled to the filing fee for this case, as the docket reflects that Plaintiff paid the then-applicable $400 fee. (ECF No. 1 Dkt. Entry.) Plaintiff also submits receipts to support the remaining costs of $1,914.70—specifically, $77 for service of process on Lima, $300 in mediation fees, $1,462.70 for a court reporter for Plaintiff's deposition, and $75 for various background checks on Mejia. (*See generally* Oates Decl. Ex. H, ECF No. 45-8.)

---

[22] The total attorneys' fees are calculated as: ($400 × 3.1 hours) (Mr. Faillace) + ($375 × 41.3 hours) (Mr. Oates) + ($300 × 4.9 hours) (Mr. Tannenbaum) + ($100 × 2.9 hours) (paralegal) = $18,487.50.

Therefore, the Court respectfully recommends that Plaintiff should be awarded a total of **$2,314.70** in costs.

## VII.   <u>CONCLUSION</u>

In summary, the Court finds that Plaintiff sufficiently alleges Defendants' violations of the FLSA and NYLL.  Accordingly, the Court respectfully recommends **granting in part** Plaintiff's motion for default judgment as follows: (1) a default judgment should be entered against Defendants and (2) Plaintiff should be awarded damages in the amount of $142,383.58, which includes: (a) $46,129.80 for unpaid minimum wage and overtime pay; (b) $2,961 in unpaid spread of hours premium pay; (c) $49,090.80 in liquidated damages; (d) $970 for unreimbursed equipment costs; (e) $22,429.78 in prejudgment interest to increase by $12.10 per day until the entry of judgment; (f) post-judgment interest as set forth in 28 U.S.C. §1961(a); (g) attorneys' fees of $18,487.50; and (h) costs of $2,314.70.  The Court further recommends that Plaintiff should be awarded an automatic increase of 15 percent, as provided by New York Labor Law § 198(4).

A copy of this Report and Recommendation is being served on Plaintiff via ECF.  The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Defendant at the following addresses forthwith: (1) Lima Restaurant Corp. (d/b/a Lima Restaurant & Bar), 85-07 Northern Boulevard, Jackson Heights, New York 11372; and (2) Carlos Mejia, 10 Bayard Avenue, Bayville, New York 11709.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Vitaliano.  If a party fails to object timely to this Report and Recommendation, it waives any right to further

judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 29, 2023

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge